UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                        Plaintiff,

v.                                      Case No. 17-CR-20315
                                      Honorable Thomas L. Ludington

LAMONT QUENTON DENER,

                        Defendant.

_____/

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE
WITH PREJUDICE AND DEFENDANT'S REQUEST FOR APPOINTMENT OF
COUNSEL**

On July 25, 2017, Defendant Lamont Quenton Dener pled guilty to one count of distributing heroin, in violation of 21 U.S.C. § 841(a)(1). ECF No. 17. He was sentenced to 151 months imprisonment. ECF No. 25. Defendant is currently housed at Federal Correctional Institution, Milan ("FCI Milan") in Washtenaw County, Michigan. On August 3, 2020, Defendant wrote a letter asking that counsel be appointed to assist him in preparing a motion for compassionate release. ECF No. 30. However, due to mailing delays caused by COVID-19, Defendant's letter was not docketed until September 16, 2020. On August 10, 2020, Defendant moved *pro se* for compassionate release or transfer to home confinement pursuant to 18 U.S.C. § 3582(c)(1)(A). ECF No. 27. Plaintiff, the United States of America (the "Government"), responded to the motion on August 24, 2020. ECF No. 28. Defendant has since filed a timely reply brief. ECF No. 29. For the reasons stated below, Defendant's motion for transfer to home confinement or compassionate release will be denied with prejudice, and Defendant's request for an attorney will be denied as moot.

## I.

Defendant seeks a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), which provides:

> The court may not modify a term of imprisonment once it has been imposed except…upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment… after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that…extraordinary and compelling reasons warrant such a reduction…and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).[1] The statute provides three inquiries that must be addressed in resolving Defendant's motion for compassionate release. First, whether Defendant fully exhausted his administrative remedies with the Bureau of Prisons (the "BOP"). Second, whether a sentence reduction is warranted in consideration of the factors set forth in 18 U.S.C. § 3553. Finally, whether "extraordinary and compelling reasons warrant such a reduction" and whether the reduction is consistent with the applicable Sentencing Commission policy statements. Each inquiry will be addressed in turn.

## A.

As explained in the statute, before a court may consider an inmate's request for a reduced sentence under 18 U.S.C. § 3582, the inmate must first exhaust his administrative remedies with the BOP or wait 30 days after making such a request. The Sixth Circuit has explained that:

> By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of

---

[1] To the extent that Defendant wants the Court to recommend home confinement to the BOP, "[d]esignation of an inmate's place of confinement, including placement in home confinement [under section 12003(b)(2) of the CARES Act], rests within the absolute discretion of the BOP." *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *6 (E.D. Mich. July 17, 2020) (internal quotation marks omitted). As a result, "the district court has no authority to grant relief under section 12003(b)(2)." *Id.*

COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause.

*United States v. Alam*, 2020 WL 2845694, at *4 (6th Cir. June 2, 2020). Neither Defendant's initial motion, nor his lengthy reply brief, mention exhaustion.[2] The Government, nonetheless, contends that Defendant submitted a request to the Warden on May 26, 2020, which was subsequently denied on July 23, 2020. ECF No. 28 at PageID.132. While no evidence of exhaustion has been filed, the Government's statement will be construed as a concession of exhaustion. Accordingly, Defendant has exhausted his administrative remedies with the BOP.

**B.**

The next consideration is whether the sentence reduction is warranted under the factors of 18 U.S.C. § 3553(a). They are as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for--

---

[2] Defendant's reply brief is twelve pages, excluding exhibits. Under Local Rule 7.1, the text of a reply brief should not exceed seven pages. L.R. 7.1(d)(3). Furthermore, Defendant's reply brief advances numerous novel arguments, even though a reply brief "is not the proper vehicle to raise new arguments." *White v. United States*, 23 F. App'x 570, 571 (7th Cir. 2001). Regardless, in the interest of thoroughness, all of Defendant's arguments will be considered in this order.

> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines…

(5) any pertinent policy statement…

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). Defendant's underlying offense is the distribution of heroin, in violation of 21 U.S.C. § 841(a)(1). ECF No. 17. Drug-related offenses are serious, and Defendant has served only a fraction of his 151-month sentence. Additionally, this was not Defendant's first drug-related offense. According to his Presentence Investigation Report ("PSR"), Defendant was previously convicted of delivery of cocaine in 2007 and possession with intent to deliver cocaine in 2010. Furthermore, as explained in Section I.C.2. below, Defendant's history with narcotics and his previous firearm offense demonstrate that he would be a danger to others or the community if released. Accordingly, under the § 3553 factors, Defendant is not entitled to a sentence reduction.

## C.

The next inquiries to be resolved are whether "extraordinary and compelling reasons warrant such a reduction" and whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission promulgates the United State Sentencing Guidelines ("U.S.S.G."). The applicable policy statement is found in U.S.S.G. § 1B1.13, which provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment…if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction;…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13. Defendant fails to show an extraordinary and compelling reason for release and that he would not pose a danger to others or the community if released.

**1.**

The commentary of the policy statement provides additional guidance about which circumstances qualify as extraordinary and compelling reasons. It provides:

[E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.--

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is--

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.--

(i)     The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13. Defendant is 43 years old, overweight, and has poor eyesight.[3] ECF No. 27 at PageID.125. He also claims to have a family history of diabetes and hypertension. *Id.* Defendant argues that these conditions qualify him for compassionate release. He is correct that being overweight is a risk factor for developing serious COVID-19 symptoms. Even so, a "generalized risk of contracting COVID-19 and potentially developing the more severe symptoms is not akin to the type of 'extraordinary and compelling reasons' justifying compassionate release." *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020). Poor eyesight, however, does not seem to be a risk factor for COVID-19.

Defendant's family history is similarly uncompelling. "The CDC says nothing about people with family histories of diabetes or high blood pressure, or, for that matter, people who are at risk of diabetes or high blood pressure." *United States v. Gayle*, No. 10 CR 391-19 (CM), 2020 WL 4671718, at *3 (S.D.N.Y. Aug. 12, 2020) (denying compassionate release to defendant alleging family history of diabetes and hypertension). "To the contrary, the CDC only explains that people who actually have specific subsets of diabetes and high blood pressure—namely, Type 2 diabetes mellitus and pulmonary hypertension—as being at 'increased risk for severe illness from COVID-19.'" *Id.* Defendant has not alleged any medical condition that would constitute a

---

[3] The Government states that Defendant's medical records do not support the claim of being overweight, ECF No. 28 at PageID.132, but neither the Government nor Defendant have produced medical records. Accordingly, the Court will assume, for purposes of this order, that Defendant is overweight as claimed.

"terminal illness" or "serious physical or medical condition," even combined with the risk of contracting COVID-19. Accordingly, Defendant has not stated an extraordinary and compelling reason for release under subsection (A).

Subsections (B) and (C) are also inapplicable. Regarding subsection (B), Defendant is only 43 years old. With respect to subsection (C), Defendant is not alleging the death or incapacitation of the caretaker of his minor children, nor is he alleging the incapacitation of a spouse. *See* U.S.S.G. § 1B1.13. Accordingly, Defendant has not stated an extraordinary or compelling reason for release as set forth in the policy statement commentary.

Nonetheless, Defendant argues that the commentary is nonbinding and that this Court should find another extraordinary and compelling reason for release. ECF No. 29 at PageID.147–50. However, even if the commentary is nonbinding, Defendant has not identified any other extraordinary and compelling reason for release. Defendant primarily argues that FCI Milan has managed the COVID-19 pandemic poorly, putting him and other inmates in danger. *Id.* at PageID.150–53. As an example, Defendant includes as exhibits two documents that purport to be invitations to a chess tournament and scrabble tournament. *Id.* at PageID.164–65. The invitations were allegedly prepared by FCI Milan and distributed to inmates. *Id.* at PageID.153. The obvious implication is that FCI Milan is encouraging inmates to ignore social distancing and thereby violate CDC guidelines. The Government has had no opportunity to respond to these allegations, and nothing else is known about these purported tournaments.[4] Currently, the only active reported case of COVID-19 at FCI Milan is in a staff member. *See* COVID-19, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ [https://perma.cc/8WLU-22NJ] (last visited September 21, 2020).

---

[4] This issue, among others, was raised for the first time in Defendant's reply brief.

Clearly, every federal correctional facility should comport with CDC guidelines when possible to minimize the spread of COVID-19. While Defendant's allegations are not taken lightly, they fall far below demonstrating an extraordinary and compelling reason for release. First, the chess and scramble tournaments may have already taken place, and, as indicated above, FCI Milan is only reporting one case of COVID-19. Second, and more principally, Defendant's contention that he would be safer "regardless of where he is released to" is meritless. ECF No. 29 at PageID.153. For example, while Defendant emphasizes that FCI Milan has no doctor on site, he does not claim to have received inadequate medical treatment nor explain why having a doctor on site, as opposed to other medical staff, is significant for purposes of COVID-19. Moreover, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). Without minimizing Defendant's concerns, "the pandemic is a global phenomenon and some risk is inherent no matter where [Defendant] resides, either at home or in prison." *United States v. Buford*, No. 05-80955, 2020 WL 4040705, at *6 (E.D. Mich. July 17, 2020) (denying compassionate release for defendant with diabetes, hypertension, asthma, and kidney disease who had previously contracted COVID-19). Accordingly, Defendant has not stated an extraordinary and compelling reason for release.

**2.**

The policy statement further directs the Court to consider the factors in 18 U.S.C. § 3142 in determining whether the defendant would be a danger to others or the community. The § 3142 factors are:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of

terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including--

> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g). These factors support the conclusion that Defendant would be a danger to others or the community if released. In 2007, Defendant was convicted of delivery of cocaine. He was sentenced to 18 months of probation but served 180 days in custody in 2009 after violating his probation. In 2010, Defendant was convicted of possession with intent to deliver cocaine and felony firearm. Police searched Defendant's residence after a series of controlled heroin purchases and discovered a .40 caliber firearm, 62 grams of cocaine, 7 grams of heroin, and other controlled substances. Defendant was paroled in July 2016. He was still on parole when, in February 2017, he committed the underlying offense: distribution of heroin, in violation of 21 U.S.C. § 841(a)(1).

Defendant's prior conviction for felony firearm is concerning. Though Defendant lacks a history of violent crime, he was nonetheless willing to carry a firearm while dealing drugs. Furthermore, "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989) (internal quotation marks omitted). Consequently, "drug trafficking is a

serious offense that, in itself, poses a danger to the community." *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010).

According to Defendant, "[i]t belies logic to suggest that he would come out of prison ready to make the same mistake as he did [three] years ago." ECF No. 29 at PageID.154. He also suggests that supervised release could be imposed to ensure the safety of the community. Defendant's position is meritless. Defendant committed the underlying offense—his third narcotics-related felony since 2007—while he was on parole for possessing with the intent to deliver cocaine and felony firearm. Defendant is apparently undeterred by the threat of supervision, and he has advanced no reason for why supervised release today would be any different. Indeed, according to his PSR, the residence he proposes to return to after release was his residence when he committed the underlying offense. *See* ECF No. 27 at PageID.125.

Defendant further asks this Court to consider that if he were resentenced today, he would not qualify as a career offender because his 2007 conviction for delivery of cocaine would not qualify as a predicate controlled substance offense. ECF No. 29 at PageID.156 (citing *United States v. Havis*, 927 F.3d 382 (6th Cir.), *reconsideration denied*, 929 F.3d 317 (6th Cir. 2019)). Defendant is mistaken. The Sixth Circuit recently held that "[t]here is no meaningful difference between the federal offense of distribution and the Michigan offense of delivery." *United States v. Thomas*, 969 F.3d 583, 585 (6th Cir. 2020) (rejecting argument that Michigan conviction for delivery of heroin was not predicate offense for career offender designation). If he were resentenced today, Defendant would still be designated as a career offender despite *Havis*.

Defendant emphasizes his completion of correctional programming and his desire to lead a new life. Defendant's apparent commitment to reform is, of course, laudable. Regardless, for purposes of compassionate release, Defendant must demonstrate that he would not pose a danger

to the safety of others or the community, and he has failed to do so here. Accordingly, Defendant's motion for compassionate release will be denied.

## II.

Defendant's request for the appointment of counsel is premised solely upon his motion for compassionate release. ECF No. 30. Accordingly, Defendant's request for the appointment of counsel will be denied as moot.

## III.

Accordingly, it is **ORDERED** that Defendant Lamont Quenton Dener's Motion for Compassionate Release, ECF No. 27, is **DENIED WITH PREJUDICE.**

It is **ORDERED** that Defendant's Request for Appointment of Counsel, ECF No. 30, is **DENIED AS MOOT**.

Dated: September 23, 2020                    s/Thomas L. Ludington
                                             THOMAS L. LUDINGTON
                                             United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Lamont Quenton Dener** #42716-039, MILAN FEDERAL CORRECTIONAL INSTITUTION, Inmate Mail/Parcels, P.O. BOX 1000, MILAN, MI 48160 by first class U.S. mail on September 23, 2020.

                                             s/Kelly Winslow
                                             KELLY WINSLOW, Case Manager